UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE APPLICATION OF FURSTENBERG
FINANCE SAS and MARC BATAILLON

REQUEST FOR DISCOVERY PURSUANT TO
28 U.S.C. § 1782

Civil Action No. 18-Misc._____

---

## *EX PARTE* APPLICATION
## FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Applicants Furstenberg Finance SAS and Marc Bataillon (collectively, "Applicants"), by and through their undersigned counsel, Holland & Knight LLP, along with their memorandum of law and the Declaration of Warren E. Gluck, dated February 6, 2018 ("Gluck Declaration"), in support, submit this *ex parte* application for discovery pursuant to 28 U.S.C. § 1782 ("Application"), for the production of relevant documents in possession, custody and/or control of the following banks: Bank of America N.A.; Bank of China; The Bank of NY Mellon; BNP Paribas SA; Citibank, N.A.; Commerzbank AG; Deutsche Bank Trust Company Americas; HSBC Bank (USA), N.A.; JPMorgan Chase Bank, N.A.; Société Générale; Standard Chartered Bank; and UBS AG (each a "Bank" and, collectively, "New York Banks"), each of which is found in this District, for use in reasonably contemplated foreign criminal proceedings in Luxembourg against Jean-Michel Paul ("Paul").

### INTRODUCTION

This Application seeks a routine order authorizing intermediary bank discovery from certain New York Banks for use in a foreign proceeding pursuant to 28 U.S.C. § 1782. Applicants are current and former shareholders in Acheron Portfolio Corporation (Luxembourg) S.A. ("Acheron" or "APC"). Applicants have received information from multiple sources indicating

1

that Jean-Michel Paul ("Paul"), an Acheron director, has an undisclosed ownership interest in an entity based in Florida, Litai Assets LLC ("Litai"), a service provider for Acheron.  Paul's undisclosed interest is a crime in Luxembourg and Applicants have and continue to be directly prejudiced as a result of Paul's crimes.  Applicants intend to file a criminal complaint with a claim for civil damages against Paul in Luxembourg arising out of his undisclosed conflict of interest.

A similar discovery proceeding is ongoing in the Southern District of Florida in connection with the same Luxembourg criminal proceedings against Paul.  After extensive briefing at the district and appellate levels concerning a related application to the United States District Court for the Southern District of Florida, the Eleventh Circuit held that Applicants satisfied the requirements of 28 U.S.C. § 1782 and were entitled to discovery from a Florida entity, Litai, in aid of the Luxembourg criminal proceeding.  *See Furstenberg Finance SAS v. Litai Assets LLC*, 877 F.3d 1031 (11th Cir. Dec. 15, 2017).  The issues are identical and the Eleventh Circuit's clear holding is persuasive.

Despite the clear rulings, Litai continues to oppose making meaningful disclosure regarding Paul's interest and Litai's offshore owners.  Based on Litai's multiple failures to comply with its discovery obligations, the Southern District of Florida granted three motions to compel, a motion for contempt, and awarded Applicants attorneys' fees three times.  On January 30, 2018, the Southern District of Florida granted Applicants' third motion to compel and for contempt issuing sanctions against Litai for its continuous failure to comply with its discovery obligations. *In re Furstenberg Finance SAS*, No. 16-cv-60266, at 8 ¶ 2 (S.D. Fla. Jan. 30, 2018).[1]  For example, it is undisputed that Litai has failed to produce a single e-mail to, from, or including Paul.

---

[1] A copy of the January 30, 2018 Order on Applicants' third Motion to compel discovery and for contempt is attached to the Gluck Declaration.  *See* Declaration of Warren E. Gluck, dated February 6, 2018 ("Gluck Decl."), Ex. 46.

Now, as it has become clear that Litai must either disclose meaningful information regarding Paul or be subject to serious penalty, Paul is attempting to liquidate Acheron—the very publicly traded company that has paid Litai millions of dollars, and, importantly, the entity to which Paul withheld disclosure. The timing of the proposed liquidation is highly suspicious.

For the reasons set forth below, Applicants respectfully request that the Court grant the Application.

## JURISDICTION, PARTIES AND VENUE

Jurisdiction and venue are proper as this Application seeks documents in the possession, custody, or control of the New York Banks, each of which is found in this District. Applicants are current and former shareholders in Acheron.

## FACTS AND RELATED PROCEEDINGS IN FLORIDA

**A.    Background**

The parties' underlying dispute concerns the conduct of Paul, in his role as a director of a Luxembourg entity, Acheron. Acheron is a public limited liability company that invests in life insurance policies, which are held for Acheron via multiple trusts based in the United States. Gluck Decl., Ex. 18 ("First Sabatier Decl.") ¶ 18.[2] Two of the trusts are managed by Acheron Capital Limited ("Acheron Capital" or "ACL"). First Sabatier Decl. ¶ 19. Acheron has paid millions of dollars to Acheron Capital for investment management services since 2009. *Id*. ¶ 24. Paul is a director of Acheron and the owner of Acheron Capital. *Id*. ¶ 17.

Acheron relies on other companies to administer the policies, and, since 2009, it has directed more than 70% of that business to a Florida-based company, Litai, pursuant to a service agreement. *Id*. ¶ 32. Although the exact amount is contested, Acheron has paid Litai millions of

---

[2] Applicants submit copies of the sworn declarations submitted in the Southern District of Florida proceedings as exhibits to the Gluck Declaration. Each of these declarations were made under penalty of perjury of the laws of the United States.

dollars in servicing fees. *Id.* ¶¶ 23, 33. The Litai-Acheron service agreement contains unusual and non-commercial terms, notably, that Acheron's receipt of an "administrative fee discount" from Litai depends upon Acheron's keeping Acheron Capital as investment manager of the trusts.[3] *See id.* ¶ 31; Gluck Decl., Ex. 31 ("Reinhold Decl.") ¶ 5.

The Applicants here are Furstenberg Finance SAS and Bataillon. Erich Bonnet is the principal beneficial owner of Furstenberg Finance SAS, which is a minority shareholder of Acheron. First Sabatier Decl. ¶ 16; Gluck Decl., Ex. 28 ("First Bonnet Decl.") ¶¶ 3-4. Bataillon is a former minority shareholder of Acheron, and a current minority shareholder of a Luxembourg company called Ahmose S.A. ("Ahmose"), whose performance is dependent on the performance of Acheron. First Sabatier Decl. ¶ 16; Gluck Decl., Ex. 29 ("First Bataillon Decl.") ¶ 2. Ahmose was founded by Samuel and is indirectly controlled by Paul and his company Acheron Capital. First Sabatier Decl. ¶ 16. Samuel is also the chief executive officer of Litai. *Id.* ¶ 26. Samuel and Paul are close friends, who own and operate multiple businesses together. *Id.*

In 2015, Bonnet learned from a former Acheron Capital employee that Paul has an undisclosed beneficial ownership interest in, and control over, Litai. First Bonnet Decl. ¶ 7. Bonnet shared this information with Bataillon, and they then conducted a further investigation. First Bataillon Decl. ¶¶ 3-4. As a result of that investigation, Bonnet and Bataillon learned that a former member of Acheron's Board had resigned in 2010 because of Paul's undisclosed beneficial ownership interest in Litai. First Bonnet Decl. ¶ 7; First Sabatier Decl. ¶ 36 & Ex. A. In addition, Bonnet learned from a former Acheron administrator that Paul's role in negotiations between Acheron and Litai in 2009 indicated Paul had an undisclosed interest in Litai. Reinhold Decl. ¶¶

---

[3] Paul allegedly recused himself from negotiating the renewal of the Litai-Acheron servicing agreement based on being "conflicted." Recusing himself from the renewal negotiations supports that Paul has an interest in Litai.

7-9. Although Bonnet had been on the Acheron Board at that time, he did not know of Paul's interest in Litai. First Bonnet Decl. ¶¶ 7-8.

In light of the foregoing, Applicants intend to file a complaint in the Luxembourg Criminal Court. First Bonnet Decl. ¶¶ 12-13; First Bataillon Decl. ¶¶ 6-8. Under Luxembourg law, a conflict of interest constitutes criminal misconduct if there is a misuse of corporate assets, fraud, or managerial misconduct. First Sabatier Decl. ¶¶ 42-48.

**B.    The Eleventh Circuit affirms that discovery into Paul's alleged wrongdoing was warranted, and related procedural history.**

After considerable briefing at the district and appellate levels concerning a nearly identical application to the Southern District of Florida, the Eleventh Circuit held that Applicants satisfied the requirements of 28 U.S.C. § 1782 and were entitled to discovery from Litai. *See Furstenberg Finance SAS v. Litai Assets LLC*, 877 F.3d 1031 (11th Cir. Dec. 15, 2017).

In connection with the criminal proceedings they intend to file in Luxembourg, Applicants filed a § 1782 action in the Southern District of Florida to obtain discovery from Litai, and its chief executive officer Samuel, concerning Litai and Paul's undisclosed ownership and control of Litai.

Litai moved to quash and Applicants cross moved to compel. In the course of the Southern District of Florida briefing on such motions, Applicants filed ten sworn declarations from six separate individuals in support of their discovery request.[4] Applicants submitted declarations to provide a detailed description of the underlying dispute from individuals with personal knowledge of it. Two of the declarants are Luxembourg law experts, who describe in detail relevant Luxembourg law and the criminal actions that Applicants will file in Luxembourg. Applicants also made unequivocal statements under penalty of perjury that they will commence criminal actions within 45 days of completion of the discovery ordered by the Southern District of Florida

---

[4] *See* Gluck Decl., Exs.: 18 (First Sabatier Decl.); 27 (Second Sabatier Decl.); 28 (First Bonnet Decl.); 29 (First Bataillon Decl.); 30 (Meeus Decl.); 31 (Reinhold Decl.); 38 (Grasso Decl.); 39 (Third Sabatier Decl.); 40 (Second Bataillon Decl.); 41 (Second Bonnet Decl.).

or destroy the documents and forever maintain their confidentiality. Gluck Decl., Ex. 41 ("Second Bonnet Decl."), ¶ 5. The Florida Court found this evidence to be highly persuasive.

In July 2016, the Southern District of Florida issued an order authorizing Applicants to serve discovery requests on Litai for use in the Luxembourg criminal proceeding, denying Litai's motion to quash, granting Applicants' motion to compel, and awarding Applicants attorneys' fees. *See In re Furstenberg Finance SAS*, No. 16-cv-60266, 2016 WL 10707012 (S.D. Fla. July 27, 2016). The Southern District of Florida explained:

- "Applicants have sufficiently shown that they indeed satisfy the statutory conditions of Section 1782," 2016 WL 10707012, at *7;

- "Applicants satisfy the 'interested persons' prong of Section 1782 as complainants who will prompt a foreign investigation and who 'possess a reasonable interest in obtaining [judicial] assistance,'" *id*. (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004);

- "[T]he 1782 Application is not a 'fishing expedition' and the foreign proceedings are within 'reasonable contemplation,'" *id*.; and

- "Accordingly, this Court finds 'sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially' and such evidence will 'eventually be used in such a proceeding,'" *id*. (citing *Consorcio*, 747 F.3d at 1270).

Litai appealed that order and, in December 2017, the Eleventh Circuit affirmed (within one week of oral argument) that the authorized discovery was properly granted. *Furstenberg Finance SAS v. Litai Assets LLC*, 877 F.3d 1031. The Eleventh Circuit held:

- "The district court did not err by concluding the discovery sought was 'for use in a proceeding in a foreign or international tribunal,'" *id*. at 1034;

6

- "Applicants intend to file a criminal complaint with a claim for damages in Luxembourg. The complaint will trigger a criminal investigation by a judge. Such investigations are proceedings within the meaning of § 1782," *id.*;

- "Nor did the district court err by concluding Applicants have produced 'reliable indications of the likelihood that proceedings will be instituted within a reasonable time,'" *id.* at 1035 (citing *Consorcio*, 747 F.3d at 1270);

- "Litai contends Applicants are not "interested persons" within the meaning of § 1782. We disagree," *id*; and

- "Here, Applicants plan to file a criminal complaint with a claim for civil damages in Luxembourg. As part of the process, Applicants have the right to submit information for the investigating judge's consideration. A criminal investigation will begin unless the judge concludes the complaint is inadmissible. Any of the parties can appeal a decision not to proceed," *Id*.

### C.   Litai fails to comply with its discovery obligations.

For nearly two years, Litai—a sophisticated servicer of life settlement policies—and its Chairman Samuel have evaded and opposed meaningful disclosure at incredible cost. *See* Gluck Decl. ¶ 14. Indeed, the Southern District of Florida has already granted three motions to compel and awarded Applicants attorneys' fees based on Litai's failures to comply with its discovery obligations, including, but not limited to, by failing to produce a single e-mail to, from, or including Paul. *Id.* ¶ 15. On January 30, 2018, the Southern District of Florida granted Applicants' third motion to compel and for contempt - issuing sanctions against Litai for its continuous failure to comply with its discovery obligations. *Id.* ¶ 16 & Ex. 46. In stark contrast to Litai, the New York Banks are not under Paul and Samuel's control.

Now, as it has become clear that Litai must either disclose meaningful information regarding Paul or be subject to serious penalty, they are trying another tactic: Paul is attempting to liquidate Acheron. *Id.* ¶ 17 & Ex. 51. By a Notice of Meeting, dated January 26, 2018, Acheron shareholders were informed of an extraordinary general meeting of shareholders proposing the liquidation of Acheron. *Id.* Given the background, the timing of the proposed liquidation is highly suspicious.

Applicants seek to obtain meaningful information from banks located in this District who are in the business of processing United States Dollar denominated wire transfers, and will have processed the wire transfers relevant to the issues in the Luxembourg proceeding–namely the disbursement of funds from Litai to entities beneficially owned, owned and/or controlled by Samuel and Paul, as well as transfers related to Samuel and Paul's purchase of Litai in the first instance. *Id.* ¶ 18.

**D.   Applicants' evidence supports their intention to file claims in Luxembourg arising from Paul's misconduct.**

Applicants provide considerable support for the requested discovery assistance, including a 2015 email from Eric Kalfon, stating that he had resigned from the Acheron Board in 2010 because of Paul's undisclosed interest in Litai. First Sabatier Decl. ¶ 36 & Ex. A. Romain Sabatier, an experienced Luxembourg attorney, presents documents and information related to the foreign proceeding. In his declaration, Sabatier notes that Samuel—who is Ahmose's founder and Paul's close friend and business partner—had been appointed Litai's Chairman and CEO, even though Samuel does not have any insurance experience. *Id.* ¶ 37. Sabatier also explains that Paul "has appeared to be making a concerted effort to promote the business of Litai, as well as investment opportunities offered by entities affiliated with Litai." *Id.*

Bonnet explains that, although he was a director at Acheron from 2008 through 2010, "at no time during that period did [he] know or suspect that [Paul] was the covert owner of Litai."

8

First Bonnet Decl. ¶ 5. Bonnet "only learned about [Paul's] undisclosed and covert beneficial ownership and control of Litai in or about the summer of 2015, when [he] was discussing [Acheron]/Litai with a former employee of [Acheron Capital]." *Id*. ¶ 7. Then, in December 2015, Kalfon disclosed to Bonnet that he decided to resign from Acheron's Board "due to [Paul's] undisclosed and covert beneficial ownership and control of Litai." *Id*. Bonnet further states that he "possess[ed] certain confidential knowledge concerning what [he] now know[s] to be a significantly detrimental contract provision," in the 2009 Litai service agreement, "the existence of which [he] learned while serving on [Acheron's] board (at a time when [he] was unaware of [Paul's] covert ownership of Litai)." *Id*. ¶ 10.[5]

Bataillon explains that he did not know about Paul's alleged interest in Litai until he spoke with Bonnet in the summer of 2015, and that, "[s]ince that time, [he has] worked to investigate these allegations, sharing expenses with [Furstenberg Finance SAS] both in Europe and the United States." First Bataillon Decl. ¶¶ 3-4. According to Bataillon, the allegations of Pauls' wrongdoing are "based upon actionable intelligence received from both a former employee of [Acheron Capital] and a former board member of [Acheron]." *Id*. ¶ 6.

Bonnet and Bataillon plan to present testimony to the Luxembourg Criminal Court. First Bonnet Decl. ¶ 13; First Bataillon Decl. ¶ 6. Reinhold, a former Acheron administrator, explains that Paul appeared to have a link to Litai at the time the 2009 service agreement between Acheron and Litai was drafted. Reinhold Decl. ¶ 7. Specifically, Paul reported that Litai rejected Acheron's proposed price terms for servicing the policies and stated that he should not be involved in further communications between Acheron and Litai because he was "conflicted." *Id*. ¶¶ 8-9.[6] Reinhold

---

[5] Bonnet offers to share that information *in camera* or by way of a sealed declaration so as not to violate any duties of confidentiality. *Id*.

[6] Paul alleges to have recused himself from negotiating certain Litai-Acheron agreements. *See* Gluck Decl., Ex. 27 ("Second Sabatier Decl."), ¶ 11. Recusal, of course, supports that Paul has an interest in Litai.

also notes that, during the course of the contract negotiations, he emailed Paul to question whether it was appropriate to characterize Litai as an "'independent' contractor" in the service agreement. *Id*. ¶ 9.

Finally, Bonnet and Bataillon state their unequivocal intent to file a criminal complaint in Luxembourg. *See* First Bonnet Decl. ¶ 12 ("I can state . . . without any qualification or equivocation, that [Furstenberg Finance SAS] intends to and will file a criminal complaint against [Paul] in the Luxembourg Criminal Court."); First Bataillon Decl. ¶ 8 ("In sum, I do not believe that my intent to bring the criminal proceedings against [Paul] in Luxembourg is subject to meaningful dispute."). As Bonnet further explains, "[t]he purpose of this application is to obtain evidence concerning both [Paul's] covert ownership in Litai, as well as the Litai-[Acheron] negotiation process, to present to the Luxembourg Criminal Court." First Bonnet Decl. ¶ 12.

Rosario Grasso, the former Chairman of the Luxembourg Bar Association, confirms that Applicants may file a direct criminal action in Luxembourg.[7] Gluck Decl., Ex. 38 ("Grasso Decl."), ¶ 4.1. Grasso explains that parties who allege direct prejudice may file a criminal complaint with damages claim directly in the Luxembourg Criminal Court before an investigating magistrate judge, and they are then parties to such proceedings. Grasso Decl. ¶ 5.2.1. Direct prejudice is broadly defined and includes "material, financial, reputational, or even moral" harm. *Id*. ¶ 6.1.2. Thus, "[w]hether shareholders of the company may be considered as direct injured parties . . . depends on the circumstances." *Id*.

Grasso further explains that, here, it is clear that "both Applicants can allege material, financial, reputational and/or moral damages in relation to the allegations against [Paul]," including "their reputational damages that will come from their associations with [Paul] and

---

[7] Mr. Grasso principally handles criminal cases and has been a practicing Luxembourg lawyer since 1991.

Acheron in Luxembourg and in London, as director of Acheron and advisor of Acheron (London), respectively, or even a mere moral prejudice." *Id.* ¶ 6.1.2. Sabatier, the other Luxembourg lawyer, agrees with Grasso on these points. Sabatier explained that "it is clear and obvious that Applicants have suffered economic, moral and reputational damages in relation to the crimes committed by [Paul]," which "arise not only as a result of their trading in [Acheron] shares on behalf of clients, but also due to the significant former relationships between [Acheron] and the Applicants." Gluck Decl., Ex. 39 ("Third Sabatier Decl."), ¶ 8. Specifically, "Erich Bonnet is a former [Acheron] board member, while Marc Bataillon was formerly an advisor to [Paul] with respect to Acheron (London)."[8] Third Sabatier Decl. ¶ 8.

Bonnet and Bataillon also stress that they are involved in various litigations concerning Paul, but their § 1782 Application has nothing to do with the other disputes and litigation involving the parties. Gluck Decl., Ex. 40 ("Second Bataillon Decl.") ¶¶ 13-14; Second Bonnet Decl. ¶¶ 22-23.[9]

Additional evidence indicating Paul's undisclosed interest in Litai had come to light. According to documents on the website of the Florida Secretary of State, in 2013, a company called Neptune Assets, LLC provided an annual report listing itself as managed by Paul and having a principal place of business at 1180 SW 36th Avenue, Ste 100, Pompano Beach, FL, 33609—the same address Litai operated out of at that time. Second Bataillon Decl. ¶ 15. The same documents

---

[8] In addition, Grasso explains that in Luxembourg, parties who have not suffered direct prejudice from an offense are still entitled to lodge a denunciation with the State Prosecutor. Grasso Decl. ¶ 5.1.6. State Prosecutors are member of the judiciary branch and are magistrates under the Luxembourg division of power, as opposed to mere representatives of the State. *Id.* ¶ 6.1.4.1; Third Sabatier Decl. ¶ 26. "As such, presenting before a State Prosecutor can be looked upon as akin to presenting directly to a judge in the United States." Grasso Decl. ¶ 6.1.4.1. Further, if the State Prosecutor declines to open a formal investigation, the complaining party may appeal that decision to the General State Prosecutor. Grasso Decl. ¶ 6.1.4.2.

[9] There have been settlement discussions between the parties to those actions. Bataillon explains that he requested Paul to purchase his shares in Ahmose in connection with the parties' other disputes because it "would provide efficiencies to both sides in a way that a simple cash deal would not," which Bataillon understood to be a "perfectly lawful transaction" that he "would never pursue" if he "was to ever receive information that a share-premium transaction was not lawful." Second Bataillon Decl. ¶12.

11

revealed that, in October 2013, Samuel took over from Paul as manager of Neptune, and stated that correspondence regarding the manager change at Neptune was to be directed to an employee at Litai. *Id*.

## THE APPLICATION SHOULD BE GRANTED

As more specifically described in the Applicants' memorandum of law (*see* pp. 14-21), the Application satisfies Section 1782's statutory factors because: (i) Applicants' intended criminal action against Paul in Luxembourg is a foreign proceeding "within reasonable contemplation"; (ii) Applicants are "interested persons"; (iii) the Luxembourg criminal proceedings qualify as foreign proceedings; (iv) the requested discovery is "for use" in the Luxembourg proceedings; and (v) the New York Banks are found within this District.

Moreover, the Application satisfies each of the four discretionary factors identified by the Supreme Court, and granting this Application will further the twin goals of the Statute of providing efficient means of assistance to participants in international litigation in our federal courts, while also encouraging foreign courts by example to provide similar means of reciprocal assistance to our courts. *Id*., pp. 21-24.

## THE DISCOVERY TARGETS

The records requested by Applicants from the New York Banks are limited to relevant Discovery Targets, each of which are directly linked to the allegations at issue in the Luxembourg criminal proceeding against Paul, namely, the covert ownership and control of Litai by Paul. The basis for the Discovery Targets being affiliated with Paul and/or Samuel is Applicants' investigation as well as documents publicly filed by Litai in the Florida proceeding. Upon such information and belief, each of the Discovery Targets is affiliated with, beneficially owned, or owned or controlled by, Paul and/or Samuel, and is a potential source or recipient of funds concerning Litai:

a. <u>Jean-Michel Paul</u> - Upon information and belief, Jean-Michel Paul is a secret owner of Litai;

b. <u>Carlo Toller</u> - Upon information and belief, Carlo Toller is the CFO of Acheron Capital Limited ("Acheron Capital" or "ACL") and a close friend of Jean-Michel Paul. Upon information and belief, Mr. Toller's yearly "bonus" is being paid by Jan-Eric Samuel or one of his companies and funneled to a Seychelles company;

c. <u>Anh Bui</u> - Upon information and belief, Anh Bui is the wife of Jean-Michel Paul.

d. <u>Litai Assets LLC</u> - Upon information and belief, Jean-Michel Paul is a secret owner of Litai;

e. <u>Vespera Life LLC</u> - Upon information and belief, Vespera Life is owned, beneficially owned, or controlled by Paul and/or Samuel;

f. <u>Wiking Assets LLC</u> - Upon information and belief, Wiking Assets is owned, beneficially owned, or controlled by Paul and/or Samuel;

g. <u>Nordland Assets LLC</u> - Upon information and belief, Nordland Assets is owned, beneficially owned, or controlled by Paul and/or Samuel;

h. <u>Neptune Assets LLC</u> - Upon information and belief, Neptune Assets is owned, beneficially owned, or controlled by Paul and/or Samuel;

i. <u>Lifelong Insurance LLC</u> - Upon information and belief, Lifelong Insurance is owned, beneficially owned, or controlled by Paul and/or Samuel;

j. <u>Lifelong Global Insurance LLC</u> - Upon information and belief, Lifelong Global Insurance is owned, beneficially owned, or controlled by Paul and/or Samuel;;

k. <u>Litai Property Management LLC</u> - Upon information and belief, Litai Property Management is owned, beneficially owned, or controlled by Paul and/or Samuel;;

    l. <u>Horo Holdings S.A.</u> - Upon information and belief, Horo Holding is owned, beneficially owned, or controlled by Paul and/or Samuel;

    m. <u>Alpcap PTE LTD</u> - Upon information and belief, Alpcap is owned, beneficially owned, or controlled by Paul and/or Samuel;

    n. <u>Tomson PTE LTD</u> - Upon information and belief, Tomson is owned, beneficially owned, or controlled by Paul and/or Samuel;

    o. <u>Hopewell Asset</u> - Upon information and belief, Hopewell Assets is owned, beneficially owned, or controlled by Paul and/or Samuel;

    p. <u>Hopewell SARL</u> - Upon information and belief, Hopewell SARL is owned, beneficially owned, or controlled by Paul and/or Samuel; and

    q. <u>Life Settlement Assets PLC</u> - Upon information and belief, Life Settlement Assets is owned, beneficially owned, or controlled by Paul and/or Samuel.

Specifically, wire transfers to, from, or referencing the Discovery Targets are likely to include transfers linking the chains of Litai's indirect ownership and payouts, revealing the source of funds used for Litai's initial purchase and subsequent financing, and the distribution of Litai's profits via the various intermediaries. Records showing direct or indirect transfers (via Samuel) from Litai to Paul, or entities under Paul and Samuel's beneficial ownership and control, will further support pleading and proving Paul's crimes.

## **NOTICE**

Applicants intend to provide notice to Paul of any subpoenas served in this action. Paul, the defendant in the to-be-filed criminal action in Luxembourg, has not appeared via counsel or otherwise in the Florida proceedings, and Applicants are not aware of counsel for Paul located in the United States. Applicants propose to provide Paul notice of any subpoenas served to Max Mailliet, who is believed to be Paul's Luxembourg counsel, as well to Paul via his public Acheron

email address. Upon information and belief, such notice is reasonably calculated to provide Paul with actual notice of any subpoenas served in this action. Paul, also submitted a declaration in the Florida proceeding. Thus, Applicants propose to provide notice of any subpoenas served to Jeff Gutchess, Esq. of AXS Law Group PLLC, Litai's counsel in the Florida proceeding, and by doing so Applicants do not concede that Litai has any legal interest or rights in these proceedings.[10]

## CONCLUSION

In summary, consistent with precedent cited above, the facts in the present matter satisfy the statutory requirements of 28 U.S.C. § 1782 and the discretionary factors set forth by the Supreme Court in *Intel*. Moreover, granting the requested discovery would further the Statute's twin aims. Therefore, Applicants respectfully request that the Court grant the Application as well as other relief that the Court finds just and proper.

WHEREFORE, pursuant to 28 U.S.C. § 1782, Applicant requests that this Court enter an Order:

1. Granting the Application.

2. Authorizing Applicants to issue and serve subpoenas on the New York Banks, for the production of the following documents for the period from 2008 to present:

   A. Copies of all orders, instructions, and records of wire transfers received from a payor/transferor bank by a payee/transferee bank, including intermediary and correspondent banks, for the benefit or credit of, or with any reference to, the following individuals and entities (collectively, "Discovery Subjects"):

   i. Jean-Michel Paul;

   ii. Carlo Toller;

   iii. Anh Bui;

---

[10] Litai is not a party to this discovery proceeding.

   iv. Litai Assets LLC;

   v. Vespera Life LLC;

   vi. Wiking Assets LLC;

   vii. Nordland Assets LLC;

   viii. Neptune Assets LLC;

   ix. Lifelong Insurance LLC;

   x. Lifelong Global Insurance LLC;

   xi. Litai Property Management LLC;

   xii. Horo Holdings S.A.;

   xiii. Alpcap PTE LTD;

   xiv. Tomson PTE LTD;

   xv. Hopewell Asset;

   xvi. Hopewell SARL; and

   xvii. Life Settlement Assets PLC.

 B. Copies of records concerning accounts, loans, lines of credit or other funding arrangements in the name of, or held beneficially for, the Discovery Subjects, including copies of present and historical account balance information, and records of incoming and outgoing payments.

3. Requiring the New York Banks to produce the documents requested in their respective subpoenas within twenty-one (21) days of service of the subpoena and as required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York.

4. Until further Order by this Court, requiring the New York Banks to preserve documents and evidence, electronic or otherwise, in their possession, custody or control that

contain information potentially relevant to the subject matter of Applicants' document request as listed in this Order; and

5. Retaining jurisdiction over the matter for the purpose of enforcing the Court's Order, as appropriate, and assessing any supplemental request for discovery assistance by Applicants; and

6. Requiring Applicants to serve a copy of the Court's Order with each discovery demand authorized by the Court.

Dated: New York, New York
February 6, 2018

HOLLAND & KNIGHT LLP

By: */s Warren E. Gluck*
　　Warren E. Gluck
　　Robert J. Burns
　　Sean P. Barry
31 West 52nd Street
New York, New York 10019
Phone: (212) 513-3200
Fax: (212) 385-9010
warren.gluck@hklaw.com
robert.burns@hklaw.com
sean.barry@hklaw.com

*Attorneys for Applicants*
*Furstenberg Finance SAS and Marc Bataillon*