UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF FURSTENBERG
FINANCE SAS AND MARC BATAILLON

18-mc-44 (JGK)

MEMORANDUM OPINION
& ORDER

JOHN G. KOELTL, District Judge:

Furstenberg Finance SAS and Marc Bataillon (together, the "petitioners") have applied, pursuant to 28 U.S.C. § 1782, for an order for the production of documents in the possession, custody and/or control of the following banks: Bank of America N.A.; Bank of China; The Bank of NY Mellon; BNP Paribas SA; Citibank, N.A.; Commerzbank AG; Deutsche Bank Trust Company Americas; HSBC Bank (USA), N.A.; JPMorgan Chase Bank, N.A.; Société Générale; Standard Chartered Bank; and UBS AG (together, the "Banks"). For the reasons discussed below, the petitioners' application is **granted in part.**

I.

Generally, the petitioners -- who were at one time or currently are investors in Acheron Portfolio Corporation Luxembourg S.A. ("Acheron") -- allege that Jean-Michel Paul, a director of Acheron, failed to disclose properly his ownership interest in a company with which Acheron did business. The petitioners allege that the discovery sought in this case will

1

aid them in pursuing a case in Luxembourg against Paul on the basis of this conflict of interest.

The petitioners are or were minority shareholders in Acheron, a public limited liability company that invests in life insurance policies. Feb. 5, 2016 Sabatier Decl. ¶¶ 13, 15, 16 (attached as Ex. 18 to the Gluck Decl., Docket No. 4-1) ("Feb. 5, 2016 Sabatier Decl."). The life insurance policies owned by Acheron are held in several trusts in the United States. Id. ¶ 18. The trusts are managed by Acheron Capital Limited ("Acheron Capital"). Id. ¶ 19.

Acheron hires other companies to administer the life insurance policies. In 2009, Acheron entered into a servicing agreement with Litai to administer the life insurance policies in the trusts. Id. ¶ 28. The servicing agreement between Litai and Acheron includes a provision requiring Acheron to use Acheron Capital as an investment manager in order to receive a certain discount for Litai's services. Id. ¶ 31; Apr. 18, 2016 Reinhold Decl. ¶ 5 (attached as Ex. 31 to the Gluck Decl., Docket No. 4-1) ("Apr. 18, 2016 Reinhold Decl.").

The petitioners allege that a current director of Acheron, Jean-Michel Paul, has an ownership interest in -- and effective control over -- Litai and that this ownership interest creates a conflict of interest that he did not properly disclose to

Acheron. Feb. 5, 2016 Sabatier Decl. ¶¶ 34-35. Paul has been a director of Acheron since late-2010. Paul is also the owner of Acheron Capital. Id. ¶ 20-21. The Chief Executive Officer of Litai, Jan-Eric Samuel, is allegedly a close friend and business partner of Paul. Id. ¶ 26.

Paul was not a director of Acheron when the servicing agreement between Litai and Acheron was negotiated in 2009, but he was a director when a renewal agreement was signed in 2014. Prum Decl. ¶ 11 (attached as Ex. C to Opp'n to Applicants' Req. for Section 1782 Disc., Docket No. 20-3) ("Prum Decl.") . While he disqualified himself from those renewal negotiations, the petitioners allege that that disqualification was not sufficient to remedy the conflict under Luxembourg law. Grasso Decl. ¶¶ 8-11 (Docket No. 29).

The petitioners allege that they first became aware of the conflict of interest when a former Acheron Capital employee informed them that Paul had an interest in Litai. Apr. 17, 2016 Bonnet Decl. ¶ 7 (attached as Ex. 28 to the Gluck Decl., Docket No. 4-1) ("Apr. 17, 2016 Bonnet Decl."). As a result of a subsequent investigation into that allegation, the petitioners learned that a former member of Acheron's board resigned in 2010 allegedly because he discovered the conflict of interest. Id.. The former board member sent an email to the petitioners

confirming that he "quit the board owing to the conflict of interest that Jean-Michel Paul's effective control of Litai, the company that services the life insurance policies managed by Acheron Capital Limited, represented." Sabatier Decl. Ex. A (attached as Ex. 18 to the Gluck Decl., Docket No. 4-1). The petitioners also learned from a former Acheron administrator that Paul's role in the negotiations of the 2009 servicing agreement indicated that Paul had an interest in Litai. Apr. 18, 2016 Reinhold Decl. ¶¶ 7-9.

The petitioners assert that they intend to file a criminal complaint in Luxembourg based on Paul's undisclosed conflict of interest due to his involvement with both Acheron and Litai. Apr. 17, 2016 Bonnet Decl. ¶¶ 12-14; Apr. 17, 2016 Bataillon Decl. ¶¶ 6-8 (attached as Ex. 29 to the Gluck Decl., Docket No. 4-1) ("Apr. 17, 2016 Batallion Decl.").

In aid of that complaint, prior to their filing of the application at issue here, the petitioners sought discovery from Litai pursuant to § 1782 in the Southern District of Florida. The district court granted that petition. In re Furstenberg Finance SAS, No. 16-mc-60266, 2016 WL 10707012 (S.D. Fl. July 26, 2016). That decision was affirmed by the Eleventh Circuit Court of Appeals. In re Application of Furstenberg Finance SAS, 877 F.3d 1031 (11th Cir. 2017). In July 2017, due to some

apparent difficulty enforcing the subpoena against Litai and obtaining the requested discovery, the petitioners filed a second motion to compel. The motion was granted by the district court. In re Furstenberg Finance SAS, No. 16-mc-60266, 2017 WL 6560357 (S.D. Fl. Oct. 31, 2017). The Court also awarded the petitioners attorneys' fees. Id. at *9. In December 2017, the petitioners filed a third motion to compel and a motion for sanctions. That motion was also granted by the district court. In re Furstenberg Finance SAS, No. 16-mc-60266, 2018 WL 735676 (S.D. Fl. Jan. 30, 2018). By order dated June 8, 2018, the District Court denied Litai's motion for reconsideration. (Docket No. 42-1.) Also on June 8, 2018, the petitioners filed their fourth motion to compel and for contempt against Litai in the Florida proceeding. Litai asserts that they have produced all documents responsive to the Florida subpoenas and fully complied with all of their obligations thereunder.
Docket No. 38 ¶ 2-4.

In this application, the petitioners seek discovery they assert will aid them in proving that Paul holds an ownership interest in Litai that creates a conflict of interest with his position at Acheron. The petitioners' initial application sought wire transfer records and other account records relating to accounts at the Banks held by Jean-Michel Paul and/or individuals or corporations allegedly connected to Paul or

Litai.[1]  Docket No. 1 at 15-17.  However, in a supplemental
submission to the Court, the petitioners narrowed their request
to include only wire transfer records where a Discovery Target
is listed as the originator, or the beneficiary, or is otherwise
referenced in the wire transfer.  Docket No. 33 at 1-2.  The
petitioners are not requesting account records, loan documents,
or other documents relating to the Discovery Targets' accounts
held at the Banks at this time.  Id.

Both Paul and Litai (together, the "Objectors") filed
objections to the application, arguing that the petitioners have
not met the standard under § 1782 to obtain discovery for use in
a foreign proceeding.

## II.

Under 28 U.S.C. § 1782, "[t]he district court of the
district in which a person resides or is found may order him to
give his testimony or statement or to produce a document or

---

[1] These individuals and/or corporations are:  Jean-Michael Paul,
Carlo Toller, Anh Bui, Litai Assets LLC, Vespera Life LLC,
Wiking Assets LLC, Nordland Assets LLC, Neptune Assets LLC,
Lifelong Insurance LLC, Lifelong Global Insurance LLC, Litai
Property Management LLC, Horo Holdings S.A., Alpcap PTE LTD,
Tomson PTE LTD, Hopewell Asset, Hopewell SARL, and Life
Settlement Assets PLC (together, the "Discovery Targets").  In
its supplemental submission, the petitioners imply that they
also applied for discovery from Samuel.  But neither their
application nor their moving papers list Samuel as a Discovery
Target and the petitioners therefore have not requested
discovery relating to Samuel in this application.

other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a).

There are three statutory prerequisites for this relief. First, the person from whom discovery is sought must reside or be found in the district of the district court where the application is made; second, the discovery must be for use in a proceeding before a foreign tribunal; and third, the application must be made by the foreign tribunal or "any interested person." Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (international quotation marks and citation omitted); see also In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding, No. M 19-99(RJS), 2009 WL 3335608, at *4 (S.D.N.Y. Oct. 15, 2009) ("PNS I").

Once these statutory requirements are met, the district court has wide discretion whether to issue discovery orders pursuant to § 1782(a). See id. The district court should weigh four discretionary factors:

> (1) Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;
>
> (2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

> (3) Whether the § 1782 request conceals a[n] attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
>
> (4) Whether the subpoena contains unduly intrusive or burdensome requests.

In re Microsoft Corp., 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006) (citing Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004)); see also PNS I, 2009 WL 3335608, at *4-5. "[D]istrict courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" Schmitz, 376 F.3d at 84 (quoting In re Application for an Order Permitting Metallgesellschaft AG to take Discovery, 121 F.3d 77, 79 (2d Cir. 1997)). See also In re Application of 000 Promneftstroy for an Order to Conduct Discovery for use in a Foreign Proceeding, 134 F. Supp. 3d 789, 791 (S.D.N.Y. 2015) ("Promneftstroy").

### III.

The Objectors argue that the petitioners have not met the second and third statutory requirements for discovery under § 1782.  The Objectors do not contest that the first statutory requirement -- that the Banks reside in this district -- is met in this case.

With respect to the second statutory requirement, the Objectors make several arguments regarding why the petitioners have not shown that this discovery is sought "for use" in a "foreign proceeding."

First, the Objectors argue that there is no currently pending foreign proceeding and the petitioners have not established that such a proceeding is reasonably contemplated. They thus argue that the petitioners cannot meet the statutory requirement that the discovery is sought for use in a foreign proceeding. To satisfy the "foreign proceeding" requirement, "the planned proceedings must be within reasonable contemplation." Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 123 (2d Cir. 2015). The applicant "must provide some objective indicium that the action is being contemplated . . . [and] the proceedings cannot be merely speculative." Id. at 123-24.

The petitioners have met that standard here. The petitioners have sworn that intend to file a criminal complaint against Paul in the Luxembourg Criminal Court and have articulated a specific legal theory on which they intend to rely. Apr. 17, 2016 Bonnet Decl. ¶ 12-14; Apr. 17, 2016 Bataillon Decl. ¶¶ 6-8. These sworn declarations are sufficient indicia that the action is within reasonable contemplation. See

In re Hornbeam Corp., 722 F. App'x 7, 9-10 (2d Cir. 2018) (summary order) (finding that the proceeding was reasonably contemplated where the petitioner "represented that it intended to initiate further litigation once it obtained additional information" and "articulated a theory on which it intended to litigate"); cf. Certain Funds, 798 F.3d at 124 (finding that the proceeding was not within reasonable contemplation because the party had only discussed the possibility of filing a complaint).

The Objectors also argue that the discovery is not sought "for use" in a foreign proceeding, because the petitioners will not be parties in the Luxembourg criminal proceeding and will only be permitted to offer evidence to a third-party for consideration in that proceeding. The Objectors argue that those rights in the proceeding are insufficient to satisfy the "use" requirement of § 1782.

To establish that the discovery is for "use" in a criminal proceeding, the applicant must "establish that he or she has the practical ability to inject the requested information into a foreign proceeding." In re Accent Delight Int'l Ltd., 869 F.3d 121, 132 (2d Cir. 2017). "[T]he term 'for use' in Section 1782 has only its ordinary meaning -- that the requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'" Id. "[D]iscovery sought pursuant

to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement." Mees v. Buiter, 793 F.3d 291, 298 (2d Cir. 2015).

The petitioners' legal expert has asserted that "[u]nder the relevant Luxembourg protocols, Applicants may directly bring a criminal complaint against JMP, and present evidence in support of that complaint to the investigating judge." Feb. 5, 2016 Sabatier Decl. ¶ 43. The expert also asserts that "[t]he evidence obtained via the requested discovery . . . would be directly presented to the Luxembourg investigating judge, in support of the criminal complaint to be filed by the Applicants . . . " Id. ¶ 41. The ability to present documents to an investigating judge for consideration in the foreign proceeding is sufficient "use" of the discovery to satisfy the statutory requirement. See In re Accent Delight Int'l Ltd., 869 F.3d at 132 (finding the "for use" requirement was met where the "[p]etitioners are parties to that proceeding who, while they have abandoned any claim there for monetary relief, retain the procedural right to submit the requested documents to the magistrate overseeing the investigation"); In re Berlamont, No. 14-mc-00190 (JSR), 2014 WL 3893953, at *1 (S.D.N.Y. Aug. 4, 2014) ("A complaining witness's presentation of evidence to an investigating magistrate satisfies the "for use" prong of § 1782."), aff'd sub nom. In re Application for an Order Pursuant

to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings, 773 F.3d 456 (2d Cir. 2014). The petitioners have therefore demonstrated that they seek this discovery "for use" in a foreign proceeding.

With respect to the third statutory requirement, the Objectors argue that the petitioners have not shown that they are "interested parties" within the meaning of § 1782.

Here, the petitioner's filing of a criminal complaint will trigger the legal proceedings and an independent criminal investigation. Feb. 5, 2016 Sabatier Decl. ¶ 41. The petitioners will also be considered parties to that proceeding and will have specific rights in the proceeding. June 2, 2016 Grasso Decl. ¶ 5.2.3 (attached as Ex. 38 to the Gluck Decl., Docket No. 4-1) ("June 2, 2016 Grasso Decl.") ("When a criminal complaint is submitted to the investigating judge, it constitutes criminal proceedings where the plaintiff and victim is a party with specific rights defined and regulated by CCP.") For example, the petitioners will have the right to participate by presenting evidence to the investigating judge. Feb. 5, 2016 Sabatier ¶ 41. The petitioners also would have the right to appeal a decision by the investigating judge, if the judge decided not to proceed with an investigation. June 2, 2016 Grasso Decl. ¶ 5.2.5. Such a level of participation in an

investigation is sufficient to qualify the petitioners as "interested parties" under § 1782. See Intel Corporation v. Advanced Micro Devices, Inc., 542 U.S. 241, 256 (2004) (finding that the complainant was an "interested person" where the complainant can prompt the investigation and has the right to submit information for consideration, and may proceed to court if the investigation is discontinued or dismissed); cf. Certain Funds, 798 F.3d at 118 (noting that Intel, in finding that the applicants were interested parties, relied "prominently" on the applicant's ability to use the evidence it sought pursuant to § 1782 "before the foreign administrative tribunal and courts by submitting the evidence to the investigating agency in the foreign proceedings").

The Objectors also argue that it is clear that the petitioners do not have any basis for bringing a criminal complaint in a Luxembourg court and therefore this application is simply a fishing expedition. The Objectors argue that the petitioners cannot present a claim for damages because their theory of damages premised on moral harm is unsustainable and therefore they cannot file a criminal complaint in Luxembourg. But that argument asks this Court to consider the merits of the foreign proceeding and determine whether the petitioners are likely to prove their damages in that case. This Court should not address such arguments in a § 1782 application. See

*Promneftstroy*, 134 F. Supp. 3d at 793 (declining to address the issue of whether the petitioner would have standing in a Dutch court and holding that it is "not within the Court's purview to adjudge the scope, relevance, and precedential effect of Dutch cases on later Dutch proceedings"); see also Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995) ("[I]it is unwise -- as well as in tension with the aims of [§] 1782 -- for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law."). The petitioners have asserted that they will bring a criminal proceeding and will submit the discovery they seek in this application for use in that proceeding. Their legal expert has asserted that the petitioners can allege damages sufficient to institute a criminal proceeding. June 2, 2016 Grasso Decl. 5.2.1, 6.1.2; Apr. 18, 2016 Grasso Decl. ¶¶ 15-17 (Docket No. 29) ("Apr. 18, 2016 Grasso Decl."). The Objectors may be right that the petitioners may not ultimately recover any damages in the foreign proceeding, but this Court cannot decide the merits of the contemplated foreign proceeding when deciding an application under § 1782.

Also persuasive to a finding that the petitioners' application meets the statutory requirements of § 1782 is the decision by the Eleventh Circuit Court of Appeals affirming the

decision by the Southern District of Florida granting the petitioner's application for discovery from Litai. That application was based on substantially similar facts to those presented here. In that case, the Court held that the petitioners met the statutory requirements of § 1782 for substantially the same reasons discussed above. In re Application of Furstenberg Finance SAS, 877 F.3d at 1034-35. The Court held that the contemplated investigations "are proceedings within the meaning of § 1782" and that the petitioners had demonstrated that they would institute such proceedings within a reasonable time. Id. at 1035. The court also held that the petitioners qualified as "interested persons", analogizing the participation rights asserted by the applicants in this case to those the Supreme Court found were sufficient to qualify a petitioner as an interested person in Intel. Id.

Accordingly, because the petitioners seek discovery from entities within this district for use in a foreign proceeding, and they are interested persons within the meaning of the statute, they have met the statutory requirements for discovery under § 1782.

However, the Court must also consider the discretionary factors to determine whether the application should be granted.

In this case, the discretionary factors weigh in favor of granting the application.

The first discretionary factor asks the Court to evaluate whether the documents or testimony sought by the application are within the foreign tribunal's reach, and thus accessible without resort to § 1782. Promneftstroy, 134 F. Supp. 3d at 792. "When the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought form a nonparticipant in the matter arising abroad." Intel, 542 U.S. at 264.

Here, the Banks from whom discovery is sought are not parties to the contemplated foreign proceeding in Luxembourg and the Objectors have not offered any evidence that the Luxembourg courts can compel production of documents located in New York from the Banks when the Banks are not parties to the proceeding. See In re O'Keeffe, 650 F. App'x 83, 85 (2d Cir. 2016) (summary order) (finding that the first factor weighed in favor of denying a motion to quash because the target was not a party to the foreign proceeding); Purolite Corp. v. Hitachi America, Ltd., No. 17-mc-67 (PAE), 2017 WL 1906905, at *3 (S.D.N.Y. May 9, 2017).

The Objectors argue that all of the documents the petitioners seek relate to Paul, and because Paul will be a party to the foreign proceeding in Luxembourg, the petitioners can compel him to produce that evidence in that proceeding. But Paul may not have the same records -- or the same quality of records -- as the Banks, all of which almost certainly keep account records of wire transfers. Moreover, the petitioners allege that Paul has purposefully concealed from Acheron shareholders his ownership interest in Litai. The petitioners therefore have reason to believe that Paul's own production may not be entirely forthcoming in regards to the ownership interest, a fact that the petitioners allege Paul has been attempting to hide. Moreover, none of the other Discovery Targets will be a party to the Luxembourg proceeding, and it is not clear that Paul will have access to records for all of those Discovery Targets, particularly those for which he is not the owner or manager. Accordingly, the first factor weighs in favor of granting the application.

The second discretionary factor asks the Court to weigh the foreign tribunal's "receptiveness" to assistance from a United States court. Promneftstroy, 134 F. Supp. 3d at 792. The Objectors argue that the petitioners have not offered evidence to support their contention that the Luxembourg Criminal Court would consider the materials sought in this application. But

17

that argument confuses the burden on this factor. The Court of
Appeals for the Second Circuit has instructed district courts to
"consider only authoritative proof that a foreign tribunal would
reject evidence obtained with the aid of [§] 1782." Euromepa
S.A., 51 F.3d at 1100. The Objectors have not offered such
proof here, and therefore this factor weighs in favor of
granting the application. See Promneftstroy, 134 F. Supp. 3d at
792.

The third discretionary factor seeks to identify "[w]hether
the § 1782 request conceals a[n] attempt to circumvent foreign
proof-gathering restrictions." Promneftstroy, 134 F. Supp. 3d at
792. The Objectors argue that this factor weighs against
granting the application because Luxembourg law prohibits this
type of discovery. Prum Decl. ¶ 21. But § 1782 "contains no
foreign-discoverability requirement." Mees, 793 F.3d at 303.
Applications under § 1782 should not be denied "solely because
such discovery is unavailable in the foreign court . . . ." Id.
Instead, this factor "allow[s] consideration of foreign
discoverability . . . when it might otherwise be relevant to the
§ 1782 application." Id. The Objector's cursory assertion that
a Luxembourg court would not grant a discovery application
seeking the materials sought here does not tilt this factor in
its favor. The Court therefore finds that this factor is
neutral.

The fourth and final discretionary factor asks the court to be mindful of overly intrusive or burdensome discovery requests. Promneftstroy, 134 F. Supp. 3d at 793. The Banks have not objected to this application on the grounds that the requests are overly broad and/or intrusive, which is strong support for a finding in favor of the petitioners on this factor. Additionally, in a supplemental submission, the petitioner substantially limited their requests to include only wire transfer records where a Discovery Target is listed as the originator, or the beneficiary, or is otherwise referenced in the wire transfer. This limitation substantially reduces the burden on the Banks from this request. It also reduces the intrusiveness of the request with respect to those subjects whose wire transfer information is sought. The fourth discretionary factor weighs in favor of granting the application.

Accordingly, the discretionary factors -- on the whole -- weigh in favor of granting this application.

The Objectors have also made a general argument that this application is a fishing expedition meant to harass the Objectors and extort them into paying a settlement to settle the potential Luxembourg litigation and others that have been filed in other fora. The Court acknowledges that the conduct of the

19

petitioners has not been pristine, and that the Luxembourg court admonished the petitioners for filing vexatious litigation and fined them for abuse of process. But the petitioners have demonstrated in this application that they are entitled to discovery under § 1782. The petitioners' actions in those prior litigations do not negate this showing -- nor are the allegations serious enough to cause this Court to question the credibility of the assertions made by the petitioners in this application. Indeed, the petitioners turned to an application to this Court to obtain bank records only after direct attempts to obtain documents from Litai from the federal court in Florida were being so frustrated that sanctions were imposed.

Therefore, the Court finds that the petitioners are entitled to discovery pursuant to § 1782.

IV.

The Court must still consider the appropriate scope of discovery. The petitioners have already limited their request to include only wire transfer records where a Discovery Target is listed as the originator, or the beneficiary, or is otherwise referenced in the wire transfer. That limitation is reasonable and reduces the scope of the documents sought.

20

The parties submitted supplemental briefing after argument on this application addressing the justifications for the inclusion of each Discovery Target. See Docket Nos. 33, 37 & 38.

With certain exceptions noted below, the Applicants have demonstrated a reasonable basis for selecting the Discovery Targets from whose wire transfers they are seeking. The Discovery Targets include Paul; Paul's wife whose bank accounts he has used; Litai and former titular owners of Litai; and a successor entity to Acheron. The Discovery Targets also include entities who share an address with Litai and are otherwise identified with Litai or Paul.

The Applicants have voluntarily withdrawn Toller as a Discovery Target. There is also an insufficient basis to include Tomson PTE LTD, Hopewell Asset and Hopewell SARL as Discovery Targets. There is no proffer as to how these entities are connected to Litai. These entities will therefore not be included in the Order authorizing discovery at this time.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons discussed above, the § 1782 application is **GRANTED in part** and **DENIED in part**. Discovery is authorized consistent with the accompanying order. The Clerk of Court is directed to close this action subject to reopening should it be necessary to enforce this Court's order.

SO ORDERED.

Dated:    New York, New York
          July 12, 2018

                                  John G. Koeltl
                         United States District Judge